# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

JAMES JEFFERSON KENNER,   )

                 )      3:11-cv-00784-RCJ-VPC

         Plaintiff,   )

                 )

     v.           )     **REPORT AND RECOMMENDATION**

                 )     **OF U.S. MAGISTRATE JUDGE**

R. VIDAURRI, *et al.,*     )

                 )

       Defendants.   )     October 31, 2012

_____)

        This Report and Recommendation is made to the Honorable Robert C. Jones, Chief United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.  Before the court is defendants' motion for summary judgment (#14).[1]  Plaintiff opposed (#16) and defendants replied (#18).  The court has thoroughly reviewed the record, and recommends that defendants' motion for summary judgment be granted in part and denied in part.

## I.  HISTORY & PROCEDURAL BACKGROUND

        Plaintiff James Jefferson Kenner ("plaintiff"), a *pro se* inmate, is currently incarcerated at Northern Nevada Correctional Center ("NNCC") in the custody of the Nevada Department of Corrections ("NDOC") (#7).  However, the allegations set forth in plaintiff's complaint pertain to events which occurred while plaintiff was an inmate at Warm Springs Correctional Center ("WSCC") (#4).  Plaintiff brings his civil rights complaint pursuant to 42 U.S.C. § 1983, alleging prison officials subjected plaintiff to cruel and unusual punishment, in violation of the Eighth

_____

[1] Refers to the court's docket numbers.

Amendment; subjected plaintiff to "solitary segregation" without notice of the charges against him or a prior hearing, in violation of the Fourteenth Amendment; denied plaintiff the opportunity to call witnesses at a disciplinary hearing, in violation of the Fourteenth Amendment; and conspired to ensure that plaintiff was convicted of the disciplinary charges. *Id.* The court screened the complaint pursuant to 28 U.S.C. § 1915A, and allowed plaintiff's due process claims to proceed (#3, p. 4).

Defendants have submitted documentation regarding the two offenses in custody ("OIC") which are the subject of this lawsuit, and allege the following:

OIC #315196

On October 7, 2010, correctional officer Ruben Vidaurri saw plaintiff leaving the culinary with a cup of milk (#14, Ex. C, p. 6; Ex. E, ¶ 4). Vidaurri had observed plaintiff leave the culinary with drinks several times in the previous week, and had informed plaintiff that if he left the culinary with a drink again, Vidaurri would charge him with a disciplinary violation. *Id.* When plaintiff approached, Vidaurri asked plaintiff for his identification (#14, Ex. C, p. 6; Ex. E, ¶ 5). Plaintiff grabbed his identification card and threw it at Vidaurri in an aggressive manner. *Id.* Vidaurri then ordered plaintiff to face the wall and placed plaintiff's arms in restraints. *Id.* Vidaurri escorted plaintiff to the administrative segregation unit without further incident and wrote a report detailing the facts of the altercation (#14, Ex. C, p. 6; Ex. E, ¶¶ 6-7).

Later that day, correctional lieutenant Matthew Smith gave plaintiff a notice of classification, which explained that plaintiff had been transferred to the administrative segregation unit because Vidaurri reported that plaintiff had thrown his identification card at Vidaurri (#14, Ex. B, p. 3; Ex. F, ¶¶ 5-6). Plaintiff refused to participate in the notice of classification process and refused to sign the notice of classification form. *Id.* Accordingly, Smith completed the form and noted plaintiff's refusal to sign. *Id.* Smith then left a copy of the completed form with plaintiff (#14, Ex. F, ¶ 6).

On October 10, 2010, Senior Correctional Officer Jeremy Branham served plaintiff with a notice of charges for MJ40: Propelling, MJ28: Work Stoppage and G18: Delaying/Hindering/Interfering with Staff (#14, Ex. C, p. 6; Ex. G, ¶ 5).[2]  Plaintiff refused to sign the notice of charges (Disciplinary Form I) and Branham noted plaintiff's refusal to sign on the form (#14, Ex. C, p. 6; Ex. G, ¶ 5).  Correctional Officer Earl Eubanks also signed the form as a witness for plaintiff's refusal to sign the notice of charges (#14, Ex. C, p. 6; Ex. H, ¶ 6).

On October 11, 2010, plaintiff met with caseworker Chandra Thomas to review his placement in the administrative segregation unit (#14, Ex. A, p. 1).  Thomas read plaintiff his rights, and discussed Viduarri's allegations and the pending disciplinary charges.  *Id.*

On October 18, 2010, Branham conducted a preliminary hearing, in which he read the notice of charges to plaintiff and discussed Viduarri's allegations with plaintiff (#14, Ex. G, ¶ 5).  Plaintiff informed Branham that Correctional Officer Tonya Thomas had allowed him to leave the culinary with a drink and asked to call her as a witness at his disciplinary hearing (#14, Ex. C, p. 4; Ex. G, ¶ 5).  Plaintiff then signed the preliminary hearing report (Disciplinary Form II) (#14, Ex. C, pp. 4-5; Ex. G, ¶ 6).

On November 9, 2010, Correctional Officer Robert Martinez conducted a disciplinary hearing, in which he found plaintiff guilty of M3:  Possession of unauthorized items with a value of less than $25 (#14, Ex. C, p. 1).  Martinez sentenced plaintiff to a verbal reprimand and time already served in the administrative segregation unit, which amounted to thirty-two days.  *Id.*

OIC #321269

On February 2, 2011, at 5:30 a.m., plaintiff contacted Correctional Officer Trainee Kingsley Anoshiri and demanded to be let out of his cell (#14, Ex. D, p. 5; Ex. I, ¶ 4).  Anoshiri asked plaintiff

---

[2] Although the date of service for the notice of charges appears to read October 19, 2010, Branham and Eubanks signed the form on October 10, 2010.

to wait, as he was making wake-up calls for the culinary workers, but plaintiff continued to buzz the intercom.  *Id.*  At 5:37 a.m., plaintiff demanded an emergency grievance, but refused to explain the emergency to Anoshiri (#14, Ex. D, p. 5).  At 5:44 a.m., Anoshiri let plaintiff out of his cell. Plaintiff approached the control bubble and told Anoshiri, "I will get you" (#14, Ex. D, p. 5; Ex. I, ¶ 4).  Anoshiri asked if plaintiff meant his statement to be a threat and plaintiff replied, "Yes and I will get you for all you own!"  *Id.*  Anoshiri wrote a report detailing the incident (#14, Ex. D, p. 5; Ex. I, ¶ 5).

On February 7, 2011, Senior Correctional Officer Michael Flamm served plaintiff with a notice of charges for G18: Delaying/Hindering/Interfering with Staff and MJ25: Threats (#14, Ex. D, p. 5).  Plaintiff refused to sign the notice of charges (Disciplinary Form I) and Flamm noted plaintiff's refusal to sign on the form (#14, Ex. D, p. 5; Ex. J, ¶ 5).  Flamm also conducted plaintiff's preliminary hearing.  Plaintiff participated in the preliminary hearing, however, he refused to sign the preliminary hearing report (Disciplinary Form II) (#14, Ex. D, p. 4; Ex. J, ¶ 6).  Accordingly, Flamm noted plaintiff's refusal to sign on the form.  *Id.*

On February 22, 2011, Correctional Lieutenant James Kelly conducted a disciplinary hearing (#14, Ex. D, pp. 1-2; Ex. K, ¶ 5).  The disciplinary hearing proceeded as follows:

Kelly:       This is Lieutenant Kelly.  It's approximately 6:20 p.m. on February 22, 2011.
             This is the time set aside for disciplinary hearing, James Kenner, 90035.  Is
             that right, Mr. Kenner?
Plaintiff:   Yes.
Kelly:       Okay.  Mr. Kenner, on February 1, 2011, Officer [Anoshiri] wrote a report
             which led you to being charged with a G18, delaying/hindering, and MJ25,
             threats.  I'll get into the charges in a second.  You did get a copy of this report,
             didn't you?
Plaintiff:   No.
Kelly:       You didn't.  Okay.  That's because you refused to sign, right?  Is that correct?
Plaintiff:   What?
Kelly:       You refused to sign your report for receipt of report?
Plaintiff:   I haven't even seen it.

| Kelly: | Okay.  Well, I got my signature right there saying that you refused to sign.  So if you want to call me a liar— |
| Plaintiff: | I— |
| Kelly: | -- I'll send your ass back home right now.[3] |
| Plaintiff: | I can't, I can't read that. |
| Kelly: | Okay. |
| Plaintiff: | That's why I didn't sign it. |
| Kelly: | All right.  You know what, you need to get the hell out of here right now.  S and E, I'll—Stand by.  Sit down. |
| Plaintiff: | I thought you told me to (indistinct). |
| Kelly: | Sit down.  I'm telling you to sit down.  When I tell you to get up, you get up.  Okay?  You understand what I'm saying?  Do you understand what I'm saying? |
| Plaintiff: | Yes. |
| Kelly: | Okay.  (Indistinct).  I need you to come down here and get the J3 escort, get him back home. |
| Unidentified: | Okay. |
| Kelly: | All right.  I'm going to stop the tape now until we get this situation squared away. |

This portion of the hearing lasted approximately one minute and thirty-eight seconds.  Once plaintiff was removed from the hearing, Kelly resumed recording, stating:

| Kelly: | This is Lieutenant Kelly.  It's approximately 6:35 p.m.  Mr. Kenner was removed from the hearing.  And I deliberated with Mr. Kenner in absentia, based on the written report alone.  I had no chance to call witnesses or take a statement from Mr. Kenner. |

Kelly then read the notice of charges into the record, and concluded that based on plaintiff's history of dealing with correctional officers, he was guilty of MJ25: Threats.[4]  Kelly sentenced plaintiff to 120 days in disciplinary segregation with a stat referral of 59 days (#14, Ex. M; Ex. N).

In his declaration, Kelly states that he has participated in thousands of disciplinary hearings—many as the disciplinary hearing officer (#14, Ex. K, ¶¶ 1, 4).  Of these proceedings, Kelly believes that there have been less than ten instances in which an inmate had to be removed

---

[3] The record reflects that Lt. Kelly's signature does not appear on the notice of charges (Disciplinary Form I) or the preliminary hearing report (Disciplinary Form II) (#14, Ex. D, pp. 4-5).
[4] In his declaration, Kelly states that he knew plaintiff had a history of disruptive behavior and was often a management problem (#14, Ex. K, ¶ 7).

from the hearing due to the inmate's behavior. *Id.* at 4. Kelly asserts that he knew plaintiff had refused to sign the notice of charges and had refused to participate in the preliminary hearing (#14, Ex. K, ¶ 7);[5] and that when plaintiff refused to answer basic questions in his disciplinary hearing, Kelly felt that plaintiff was being disruptive (#14, Ex. K, ¶ 8). Kelly contends that his decision to remove plaintiff from the disciplinary hearing was appropriate, given plaintiff's behavior.[6] *Id.* at 11. Kelly also opines that because plaintiff was disruptive during his disciplinary hearing, plaintiff waived the right to call witnesses. *Id.* at 10, 12.

Defendants now move for summary judgment on the grounds that: (1) defendants did not violate plaintiff's due process rights; and (2) defendants are entitled to qualified immunity (#14, pp. 1-2). Defendants attach several documents to support their motion for summary judgment, including: a case note report (#24, Ex. A);[7] administrative segregation classification documents (#14, Ex. B);[8] Disciplinary Forms I, II, and III for OIC #315196 (#14, Ex. C);[9] Disciplinary Forms I, II, and III for OIC #321269 (#14, Ex. D);[10] declarations from defendant Vidaurri (#14, Ex. E), Lt. Smith (#14, Ex. F), Officer Branham (#14, Ex. G), Officer Eubanks (#14, Ex. H), defendant Anoshiri (#14, Ex. I), Officer Flamm (#14, Ex. J), and defendant Kelly (#14, Ex. K); a copy of A.R. 707;[11] a compact disc containing audio from plaintiff's February 22, 2011, disciplinary hearing for

---

[5] This conflicts with Flamm's account that plaintiff participated in the preliminary hearing, but refused to sign Disciplinary Form II (#14, Ex. J, ¶ 6).

[6] NDOC's Administrative Regulation ("A.R.") 707 § 2(B)(3)(e)(1) reads:
   The inmate will be present at the [disciplinary] hearing except when:
   - They refuse to attend and/or waive their appearance before the Disciplinary Hearing Officer.
   - Their behavior is disruptive.
   - Confidential information is being presented.
   - The reason for an inmate's absence will be documented (#14, Ex. L, p. 19).

[7] Authenticated by the Declaration of Linda Evans (#14).

[8] Authenticated by the Declaration of Linda Evans (#14).

[9] Authenticated by the Declaration of Linda Evans (#14).

[10] Authenticated by the Declaration of Linda Evans (#14).

[11] Authenticated by the Declaration of James A. Kelly (#14, Ex. L, ¶ 9).

OIC #321269 (#14, Ex. M);[12] and a transcript of plaintiff's disciplinary hearing for OIC # 321269 (#14, Ex. N).[13]

Plaintiff opposes defendants' motion on the grounds that: (1) defendant Vidaurri violated plaintiff's due process rights (for OIC #315196) by subjecting him to "solitary confinement" without a formal notice of charges or a prior hearing (#16, p. 1); (2) defendant Vidaurri violated plaintiff's due process rights (for OIC #315196) by filing the notice of charges on a NOTIS form instead of on a Department of Correction ("DOC") form #3017, as specified in A.R. 707 (#16, pp. 2-4); (3) defendant Anoshiri violated plaintiff's due process rights (for OIC #321269) by failing to file the notice of charges on DOC form #3017, as specified in A.R. 707 (#16, p. 5);  (4) defendant Kelly violated plaintiff's due process rights (for OIC #321269) by failing to inform plaintiff of his constitutional rights (#16, p. 7); and (5) defendant Kelly violated plaintiff's due process rights (for OIC #321269) by denying plaintiff the opportunity to call witnesses at his disciplinary hearing (#16, p. 7).

The court notes that plaintiff is proceeding *pro se*.  "In civil cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt."  *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II.  LAW & ANALYSIS

### A.  RELEVANT LAW

#### 1.  42 U.S.C. § 1983

Title 42 U.S.C. § 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights."  *Conn v. Gabbert,* 526 U.S. 286, 290

---

[12] Authenticated by the Declaration of Wes Mattice (#14).
[13] Transcribed by Shannon L. Taylor and authenticated by the Transcriber's Certificate (#14, Ex. N, p. 6).

(1999).  Section 1983 does not offer any substantive rights, but provides procedural protections for federal rights granted elsewhere.  *Albright v. Oliver,* 510 U.S. 266, 271 (1994).  To prove liability under § 1983, a plaintiff must: (1) show that a person acting under color of state law engaged in some type of conduct, which (2) deprived the plaintiff of some right, privilege or immunity secured by the Constitution or federal statutory law.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overturned on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).

### 2.  Summary Judgment Standard

Summary judgment allows courts to avoid unnecessary trials where there are no factual disputes.  *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).  The court will grant summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  The court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party.  *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).  However, the Supreme Court has noted:

> [W]e must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citations omitted).  Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The moving party bears the burden of informing the court of the basis for its motion, and submitting authenticated evidence to demonstrate the absence of any genuine issue of material fact

for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see Orr v. Bank of America*, 285 F.3d 764, 773-74 (9th Cir. 2002). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson*, 477 U.S. at 248. Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and upon which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

On summary judgment the court is not to weigh the evidence or determine the truth of the matters asserted, but must only determine whether there is a genuine issue of material fact that must be resolved by trial. *See Summers v. A. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997). Nonetheless, in order for any factual dispute to be genuine, there must be enough doubt for a reasonable trier of fact to find for the plaintiff in order to defeat a defendant's summary judgment motion. *See Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

**B. ANALYSIS**

Defendants Vidaurri, Anoshiri, and Kelly contend that they did not violate plaintiff's due process rights in either disciplinary proceeding (#14, pp. 8-14). Defendants also contend that even if this court concludes that there are genuine issues of material fact surrounding plaintiff's due process claims, defendants are nonetheless entitled to qualified immunity because a reasonable correctional officer would have concluded that defendants' actions were proper under the circumstances. *Id.* at 16.

**1. Due Process**

Under the Due Process Clause of the Fourteenth Amendment, "[p]risoners . . . may not be deprived of life, liberty, or property without due process of law." *Wolff v. McDonnell*, 418 U.S. 539,

556 (1974).  A valid due process claim has three prerequisites: (1) the deprivation, (2) of a liberty or

property interest, (3) by officials acting under color of state law.  *Parratt v. Taylor*, 451 U.S. 527,

536-37 (1981).  In order to prevail on a claim of deprivation of liberty without due process of law, a

plaintiff must first establish the existence of a protected liberty interest.  After meeting this threshold

requirement, the plaintiff must then demonstrate that defendants failed to provide the process due.

*See Wolff*, 418 U.S. at 556-57; *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003).

Liberty interests may arise from two sources—the Due Process Clause itself or state law.

*Hewitt v. Helms*, 459 U.S. 460, 466-68 (1983), *abrogated in part on other grounds by Sandin v.

Conner*, 515 U.S. 472 (1995).  The Due Process Clause itself does not confer a liberty interest in

freedom from state action taken "within the normal limits or range of custody which the conviction

has authorized the State to impose."  *Sandin*, 515 U.S. at 478 (citing *Meachum v. Fano*, 427 U.S.

215, 225 (1976)).  Thus, the Supreme Court has found that the Due Process Clause does not afford

prisoners a liberty interest in being free from intrastate prison transfers, *Meachum*, 427 U.S. at 225,

or in remaining in the general prison population.  *Hewitt*, 459 U.S. at 468; *May v. Baldwin*, 109 F.3d

557, 565 (9th Cir. 1997) ("administrative segregation falls within the terms of confinement

ordinarily contemplated by a sentence.")

However, in certain circumstances, states may create liberty interests protected by the Due

Process Clause.  *Sandin*, 515 U.S. at 483-84.  For example, in *Wolff*, the Court found that a Nebraska

statutory provision created a liberty interest in an inmate's accumulation of good time credits.  418

U.S. at 557.[14]  The Court has also found that a liberty interest in avoiding transfer to particular

conditions of confinement may arise from state prison regulations, but only if the transfer "imposes

---

[14] Notably, *Sandin* did not alter the Supreme Court's ruling in *Wolff*.  Therefore, if an inmate challenges a prison's disciplinary action because it results in the forfeiture of his good-time credits, a liberty interest is recognized under both *Wolff* and *Sandin*.  This liberty interest triggers the due process guarantees available to inmates under *Wolff*.

atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

*Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222 (2005).  Under *Sandin*, a factual

comparison must be made between conditions in the general prison population and those in

administrative segregation, "examining the hardship caused by the prisoner's challenged action in

relation to the basic conditions of life as a prisoner."  *Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir.

2003).  There is no single standard for this comparison.  Instead, courts examine the "condition or a

combination of conditions" in a case by case fashion.  *Kennan v. Hall*, 93 F.3d 1083, 1089 (9th Cir.

1996).  Specifically, courts consider three factors: (1) whether the challenged sanction "mirror[s]

those conditions imposed upon inmates in administrative segregation and protective custody"

demonstrating that the prison acted within its discretionary authority; (2) the duration of the

sanction; and (3) whether the sanctions will affect the length of the prisoner's sentence.  *Serrano*,

345 F.3d at 1078.

    As noted previously, once a protected liberty interest has been found, the court must

determine what process is due under the Fourteenth Amendment and whether defendants have

provided the process due.  *Quick v. Jones*, 754 F.2d 1521, 1523 (1984).  When an inmate faces

disciplinary charges, prison officials must provide the inmate with: (1) a written statement at least

twenty-four hours before the disciplinary hearing that includes the charges and a description of the

evidence against the prisoner; (2) an opportunity to present documentary evidence and call

witnesses, unless calling witnesses would be unduly harmful to institutional security or correctional

goals; (3) legal assistance where the charges are complex or the inmate is illiterate; and (4) a written

statement by the factfinders detailing the evidence relied upon and the reasons for the disciplinary

action.  *Wolff*, 418 U.S. at 563-70.  In addition, the findings of the prison disciplinary board must be

supported by some evidence in the record.  *Superintendent v. Hill*, 472 U.S. 445, 454 (1985).  This

standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced . . .." *Id.* at 455 (citing *U.S. ex rel. Vajtauer v. Commissioner of Immigration*, 273 U.S. 103, 106 (1927)).

### *Offense in Custody #315196*

Defendants contend that they are entitled to summary judgment in their favor because plaintiff did not suffer the loss of a protected liberty interest (#14, p. 8).  Defendants state that plaintiff merely received a verbal reprimand and thirty-two days of time already served in the administrative segregation unit, which was "within the normal limits or range of custody which the conviction has authorized the State to impose . . .." *Id.*; *Sandin*, 515 U.S. at 478 (internal citations omitted).  Further, defendants contend that even if this court concludes that the disciplinary proceedings infringed upon plaintiff's protected liberty interests, plaintiff cannot show that defendant Vidaurri violated plaintiff's due process rights (#14, p. 9).

Plaintiff opposes defendants contentions, and argues that: (1) defendant Vidaurri violated plaintiff's due process rights by subjecting him to "solitary confinement" without a formal notice of charges or a prior hearing (#16, p. 1); and (2) defendant Vidaurri violated plaintiff's due process rights by filing the notice of charges on a NOTIS form, instead of a DOC form #3017, as specified in A.R. 707 (#16, pp. 2-4).

Defendants respond that: (1) plaintiff was not entitled to a formal notice of charges or a prior hearing before transfer into the administrative segregation unit (#14, p. 10, fn. 9); and (2) plaintiff does not have the right to receive the notice of charges on any particular form (#18, p. 3).

On the record before the court, there is no evidence that plaintiff's deprivations—a verbal reprimand and thirty-two days of time already served in administrative segregation—constitute the loss of a protected liberty interest.

First, segregated housing, such as administrative segregation, does not in and of itself implicate a protected liberty interest. *Serrano*, 345 F.3d at 1078; *May*, 109 F.3d at 565; *Sandin*, 515 U.S. at 484 (inmate does not have a liberty interest in preventing transfer to more restrictive conditions of confinement, unless the inmate can demonstrate that the transfer caused "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.")

Second, plaintiff has not alleged that his confinement in the administrative segregation unit presented the type of "atypical or significant, deprivation [that] might conceivably create a liberty interest." *Resnick v. Hayes*, 213 F.3d 443, 448 (9th Cir. 2000). Plaintiff has failed to set forth any facts comparing prison conditions in the general population with those in administrative segregation, and plaintiff has failed to explain how confinement in the administrative segregation unit has worked "a major disruption" in plaintiff's life as a prisoner. *See id*; *Sandin*, 515 U.S. at 486-87. In addition, plaintiff has not shown that his thirty-two days of confinement in the administrative segregation unit was "atypical or significant." *See Sandin*, 515 U.S. at 486 (30 days in disciplinary segregation did not work a major disruption in inmate's environment); *Resnick*, 213 F.3d at 445 (30 days in segregated housing unit did not give rise to a protected liberty interest). Finally, plaintiff has failed to set forth any facts which demonstrate that his thirty-two days in the administrative segregation unit negatively impacted the length of plaintiff's sentence.

The court finds that plaintiff's punishment—a verbal reprimand and thirty-two days of time served in the administrative segregation unit—was clearly "within the range of confinement to be normally expected" by prison inmates "in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87. Accordingly, the court finds that plaintiff's short time in the administrative segregation unit while awaiting his disciplinary hearing does not give rise to a protected liberty interest. Defendants are entitled to summary judgment in their favor.

Third, even assuming *arguendo* that plaintiff had demonstrated the existence of a protected liberty interest, the court finds that WSCC's procedures satisfied the due process requirements applicable to administrative segregation.

Confining an inmate to administrative segregation pending investigation of disciplinary charges against the inmate does not require any elaborate procedural safeguards. *Hewitt*, 459 U.S. at 475. When an inmate is placed in segregated housing, prison officials need only provide an informal, non-adversary review of the evidence justifying the decision to segregate the inmate. *Id.* at 476. Unlike a disciplinary proceeding, the inmate is not entitled to a "detailed written notice of charges, representation by counsel or counsel-substitute, an opportunity to present witnesses, or a written decision describing the reasons for placing the prisoner in administrative segregation." *Toussaint v. McCarthy*, 801 F.2d 1080, 1100-01 (9th Cir. 1986), *abrogated in part on other grounds by Sandin*, 515 U.S. 472. Instead, the inmate must merely receive some notice of the charges against him within a reasonable time following the inmate's transfer, and an opportunity to present his views to the prison official tasked with making the segregation decision. *Hewitt*, 459 U.S. at 476, n. 8. Prison officials must also periodically review the decision to house an inmate in administrative segregation. *Id.* at 477, n. 9.

The record reflects that plaintiff received notice of the charges against him and an opportunity to present his views about the charges within a reasonable time following plaintiff's transfer. Plaintiff was transferred to the administrative segregation unit on October 7, 2010. That same day, Lt. Smith gave plaintiff a notice of classification, which explained that plaintiff had been transferred to the administrative segregation unit because defendant Vidaurri reported that plaintiff had thrown his identification card at Vidaurri (#14, Ex. B, p. 3; Ex. F, ¶¶ 5-6). Thereafter, plaintiff met with caseworker Thomas to review his placement in administrative segregation, and to discuss

Viduarri's allegations and the pending disciplinary charges (#14, Ex. A, p. 1). Thus, even assuming that plaintiff had a protected liberty interest in freedom from confinement in the administrative segregation unit, the court finds that plaintiff received the process due. WSCC did not violate plaintiff's due process rights by confining him in the administrative segregation unit pending investigation of his disciplinary charges.

Finally, the court finds that plaintiff's argument that defendant Vidaurri violated his due process rights by filing the notice of charges on a NOTIS form instead of a DOC form #3017 has no merit. Plaintiff has a constitutional right to receive advance written notice of the charges against him. *Wolff*, 418 U.S. at 563. Plaintiff does not have a constitutional right to receive this written notice on any particular form. It is immaterial to the court whether the NDOC uses a NOTIS form to provide its inmates with notice of their disciplinary violations or uses a DOC form #3017.[15] As long as the form used adequately apprises inmates of the charges against them, due process requirements are satisfied. *See Walker v. Sumner*, 14 F.3d 1415, 1420 (9th Cir. 1994), *abrogated on other grounds by Sandin*, 515 U.S. 472 (a violation of the prison's internal regulations does not violate the Due Process Clause as long as the minimal protections outlined in *Wolff* have been provided).

Accordingly, the court recommends that defendants' motion for summary judgment be granted as to plaintiff's due process claims for OIC # 315196.

### *Offense in Custody #321269*

Defendants contend that they are entitled to summary judgment in their favor because neither defendant Anoshiri nor defendant Kelly violated plaintiff's due process rights (#14, pp. 12-14).

---

[15] Defendants assert that NDOC no longer uses form #3017, but instead, records the same information that would previously have been on form #3017 into NOTIS (#14, Declaration of Wes Mattice, ¶¶ 6-8).

Plaintiff opposes defendants' contentions, and argues that: (1) defendant Anoshiri violated plaintiff's due process rights by failing to file the notice of charges on DOC form #3017, as specified in A.R. 707 (#16, p. 5);[16]  (2) defendant Kelly violated plaintiff's due process rights by failing to inform plaintiff of his constitutional rights (#16, p. 7);[17] and (3) defendant Kelly violated plaintiff's due process rights by denying plaintiff the opportunity to call witnesses at his disciplinary hearing (#16, p. 7).

Defendants respond that: (1) defendant Kelly properly exercised his discretion to remove plaintiff from the disciplinary hearing after plaintiff became disruptive (#14, p. 13; #18, p. 5); (2) plaintiff waived his limited right to call witnesses as a result of his disruptive behavior (#14, p. 14); and (3) plaintiff has not identified any witness that he would have called to testify at the disciplinary hearing (#14, p. 13; #18, p. 5).

As a preliminary matter, the court must determine whether plaintiff had a constitutionally protected liberty interest.  The court notes that defendant Kelly found plaintiff guilty of MJ25: Threats, and sentenced him to 120 days in disciplinary segregation with a stat referral of fifty-nine days.  The court is unfamiliar with the term "stat referral."  However, defendants do not dispute the existence of a protected liberty interest in freedom from 120 days of disciplinary segregation with a stat referral of fifty-nine days.  Accordingly, the court construes defendants' silence as a concession that plaintiff had a constitutionally protected liberty interest entitling him to the procedural protections outlined in *Wolff*.  *See* LR 7-2.

As for plaintiff's argument that defendant Kelly violated plaintiff's due process rights by denying him the opportunity to call witnesses at his disciplinary hearing, the court finds that disputed

---

[16] As previously noted, plaintiff does not have a constitutional right to receive the notice of charges on any particular form.  Accordingly, plaintiff's argument has no merit.

[17] Presumably, plaintiff is arguing that defendant Kelly had a duty to inform plaintiff of his right to call witnesses at the disciplinary hearing.  Plaintiff cites no authority for this proposition.

issues of material fact exist.  The court agrees that a disciplinary hearing officer has the authority and discretion to remove disruptive inmates and to deny witnesses based on institutional safety concerns or correctional goals.  *See Ponte v. Real*, 471 U.S. 491, 495 (1984); *Baxter v. Palmigiano*, 425 U.S. 308, 321 (1975); *Wolff*, 418 U.S. at 566 (the right to call witnesses at a disciplinary hearing is limited, available to an inmate "when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals.")  However, the court does not agree that the evidence indisputably demonstrates that defendant Kelly removed plaintiff from the disciplinary hearing to preserve institutional safety or further correctional goals.  Defendant Kelly states that he felt that plaintiff was too disruptive to conduct the disciplinary hearing in plaintiff's presence.  However, the audio recording and transcript from plaintiff's disciplinary hearing merely indicate that defendant Kelly asked plaintiff some preliminary questions about whether plaintiff had received and/or signed defendant Anoshiri's report, to which plaintiff replied that he had not received a copy of the report and had not signed the report because he couldn't read it.[18]  The record is unclear as to the reasons that defendant Kelly felt plaintiff's actions were too disruptive to allow him to participate in his disciplinary hearing; and also whether plaintiff's removal advanced institutional safety or correctional goals.  Thus, the court finds there are genuine issues of material fact as to the propriety of defendant Kelly's actions in removing plaintiff from his disciplinary hearing;[19] and thus, whether

---

[18] The court has listened to the audio recording of plaintiff's February 22, 2011, disciplinary hearing.  It is clear from the audio recording that plaintiff was not being "disruptive" in the normal sense of the word, i.e., talking out of turn or engaging in an outburst.  However, plaintiff paused for several seconds before answering one of defendant Kelly's questions, which defendant Kelly may have interpreted as an attempt to delay the disciplinary proceedings.  Plaintiff only appeared at the hearing for approximately one minute and thirty-eight seconds before defendant Kelly removed him.  As the court only has an audio recording of the proceedings, it is unclear to the court if plaintiff was making a good faith effort to participate in his disciplinary hearing or was attempting to delay the proceedings.  It is also unclear if an attempt to delay the proceedings would constitute "disruptive" behavior under A.R. 707.  Thus, on the record before the court, a genuine issue of material fact exists as to whether plaintiff was disruptive in his disciplinary hearing, and whether defendant Kelly properly excused plaintiff from the hearing.

[19] The court notes that plaintiff may have a limited due process right to be present at his disciplinary hearing.  *See Williams v. Williams*, 2012 WL 1094351, at *9 (N.D. Cal. 2012).  However, plaintiff has not advanced this argument, but has confined his due process claim to the argument that defendant Kelly refused to allow plaintiff to call witnesses at

defendant Kelly was justified in denying plaintiff the right to present evidence or call witnesses on his behalf.[20]

### 2.   Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1240 (9th Cir. 2010) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "In considering a claim of qualified immunity, the court must determine 'whether the facts that plaintiff has alleged . . . make out a violation of a constitutional right,' and 'whether the right at issue was clearly established at the time of the defendant's alleged misconduct.'" *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Whether a right is clearly established turns on the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Id.* "[A]ll but the plainly incompetent or those who knowingly violate the law have immunity from suit; officers can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation." *Id.*

Defendants contend that they are entitled to qualified immunity because defendant Kelly reasonably believed that plaintiff should be removed from the disciplinary hearing due to his disruptive behavior (#14, p. 16). Defendants also contend that defendant Kelly reasonably believed that plaintiff forfeited his right to call witnesses, as the hearing had to be conducted outside of plaintiff's presence. *Id.* at 17. Further, defendants assert that given plaintiff's limited right to call

---

his disciplinary hearing. Thus, the court will also limit its analysis to the witness issue.

[20] Although defendants argue that plaintiff has not identified any particular witness he would have called at his disciplinary hearing, the court notes that there is conflicting evidence as to whether plaintiff participated in his preliminary hearing—the time set aside for designating potential witnesses (*see* #14, Ex. J, ¶ 6; Ex. K, ¶ 7). The preliminary hearing report merely indicates that "no witnesses [were] called at this time" (#14, Ex. D, p. 4). The report does not indicate whether plaintiff wished to call any witnesses at his disciplinary hearing. Further, the disciplinary hearing report indicates that plaintiff "was not asked" whether he wanted a witness (#14, Ex. D, p. 2).

witnesses when commensurate with correctional goals, defendant Kelly could not have known that denying plaintiff the opportunity to call witnesses following plaintiff's disruptive behavior would be improper. *Id.*

As discussed above, triable issues of material fact remain as to whether plaintiff acted in a disruptive manner at the February 22, 2011, disciplinary hearing; and whether defendant Kelly removed plaintiff from the hearing to advance institutional safety or further correctional goals.

When analyzing a claim of qualified immunity, the court must view the facts in the light most favorable to plaintiff. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Here, the court finds that plaintiff has presented a due process claim under the facts alleged. When viewing the facts in the light most favorable to plaintiff, defendant Kelly removed plaintiff from the disciplinary hearing without cause, thereby violating plaintiff's right to present evidence or call witnesses in his defense.

The court also finds that the general law concerning what process is due at a disciplinary hearing was clearly established at the time of the events alleged in plaintiff's complaint. *See Wolff*, 418 U.S. at 566 ("the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals.") A reasonable correctional officer would be on notice that removing an inmate from his disciplinary proceeding without justification, thereby denying the inmate his right to call witnesses on his behalf, would violate the inmate's Fourteenth Amendment right to procedural due process.

Upon resolution of the factual issues, defendant Kelly may be relieved of liability. However, if plaintiff's version of events were to prevail at trial, a jury might decide that defendant Kelly's alleged conduct amounted to a due process violation. Under such circumstances, the alleged actions

are not protected by qualified immunity.  Accordingly, the court recommends that defendants'

motion for summary judgment be denied as to plaintiff's due process claim for OIC #321269.

### III. CONCLUSION

Based on the foregoing, and for good cause appearing, the court concludes that there are no

genuine issues for trial as to plaintiff's due process claims regarding OIC # 315196.  Accordingly,

the court recommends that defendants' motion for summary judgment (#14) be **GRANTED** as to

these claims.

However, regarding OIC # 321269, the court concludes that there is a genuine issue for trial

as to whether defendant Kelly violated plaintiff's right to procedural due process by refusing to

allow plaintiff to present witnesses in his behalf at the February 22, 2011, disciplinary hearing.

Specifically, the court finds that there are disputed factual issues as to whether plaintiff was

disruptive at his disciplinary hearing (within the meaning of A.R. 707(2)(B)(3)(e)(1)); and whether,

if plaintiff was disruptive, his removal advanced institutional safety or furthered correctional goals.

Accordingly, the court recommends that defendants' motion for summary judgment (#14) be

**DENIED** as to this claim.  The parties are advised:

1.  Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the

    parties may file specific written objections to this Report and Recommendation within

    fourteen (14) days of receipt.  These objections should be titled "Objections to Magistrate

    Judge's Report and Recommendation" and should be accompanied by points and

    authorities for consideration by the District Court.

2.  This Report and Recommendation is not an appealable order and any notice of appeal

    pursuant to Fed.R.App.P. 4(a)(1) should not be filed until entry of the District Court's

    judgment.

## IV.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment (#14) be **GRANTED** in part and **DENIED** in part.

**DATED:  October 31, 2012.**

_Valerie P. Cooke_

_____

**UNITED STATES MAGISTRATE JUDGE**