# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | | |
|---|---|---|
| JAMES JEFFERSON KENNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 3:11-cv-00784-RCJ-VPC |
| v. | ) | |
| | ) | |
| R. VIDAURRI et al., | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |

This is a prisoner civil rights case pursuant to 42 U.S.C. § 1983. Before the Court is the magistrate judge's Report and Recommendation ("R&R") (ECF No. 23) on Defendants' Motion for Summary Judgment (ECF No. 14). For the reasons given herein, the Court adopts the R&R in part and rejects it in part and grants the Motion for Summary Judgment.

## I.   FACTS AND PROCEDURAL HISTORY

Plaintiff James Jefferson Kenner is currently incarcerated at the Humboldt Conservation Camp in the custody of the Nevada Department of Corrections ("NDOC") serving a sentence of five-to-fifteen years for his sixteenth DUI conviction. *See Kenner v. State*, No. 50441 (Nev. Aug. 22, 2008), *available at* http://caseinfo.nvsupremecourt.us/public/caseView.do?csIID=18211. The allegations in the Complaint concern events that occurred while Plaintiff was incarcerated at Warm Springs Correctional Center ("WSCC"). (*See* Compl. 1, Dec. 7, 2011, ECF No. 4). Plaintiff alleges that prison officials subjected him to cruel and unusual punishment in violation of the Eighth Amendment and violated his due process rights under the Fourteenth Amendment when it assigned him to segregated quarters without affording him certain procedural safeguards. (*See generally id.*).

The Court screened the complaint pursuant to 28 U.S.C. § 1915A and allowed the due process claims to proceed.

Defendants have submitted documentation regarding the two offenses in custody ("OIC") that are the subject of this lawsuit, and allege the following:

### A. Offense in Custody No. 315196

On October 7, 2010, Correctional Officer Ruben Vidaurri saw Plaintiff leaving the culinary with a cup of milk. (Mot. Summ. J., Ex. C, p. 6, ECF No. 14-2; *id.*, Ex. E, ¶ 4). Vidaurri had observed Plaintiff leave the culinary with drinks several times during the previous week and had informed Plaintiff that if he left the culinary with a drink again, Vidaurri would charge him with a disciplinary violation. (*Id.*). When Plaintiff approached, Vidaurri asked Plaintiff for his identification. (*Id.*, Ex. C, p. 6; *id.*, Ex. E, ¶ 5). Plaintiff grabbed his identification card and threw it at Vidaurri in an aggressive manner. (*Id.*). Vidaurri then ordered Plaintiff to face the wall and placed plaintiff's arms in restraints. (*Id.*). Vidaurri escorted Plaintiff to the administrative segregation unit without further incident and wrote a report detailing the facts of the altercation. (*Id.*, Ex. C, p. 6; *id.*, Ex. E, ¶¶ 6–7).

Later that day, Correctional Lieutenant Matthew Smith gave Plaintiff a notice of classification, which explained that Plaintiff had been transferred to the administrative segregation unit because Vidaurri reported that Plaintiff had thrown his identification card at Vidaurri. (*Id.*, Ex. B, p. 3; *id.*, Ex. F, ¶¶ 5–6). Plaintiff refused to participate in the notice of classification process and refused to sign the notice of classification form. (*Id.*). Accordingly, Smith completed the form and noted Plaintiff's refusal to sign. (*Id.*). Smith then left a copy of the completed form with Plaintiff (*Id.*, Ex. F, ¶ 6).

On October 10, 2010, Senior Correctional Officer Jeremy Branham served Plaintiff with a notice of charges for MJ40: Propelling, MJ28: Work Stoppage, and G18: Delaying/Hindering/Interfering with Staff. (*Id.*, Ex. C, p. 6; *id.*, Ex. G, ¶ 5).[1] Plaintiff refused to sign the notice of charges (Disciplinary Form I), and Branham noted Plaintiff's refusal to sign on the form. (*Id.*, Ex. C, p. 6; *id.*, Ex. G, ¶ 5). Correctional Officer Earl Eubanks also signed the form as a witness for Plaintiff's refusal to sign the notice of charges. (*Id.*, Ex. C, p. 6; *id.*, Ex. H, ¶ 6).

On October 11, 2010, Plaintiff met with caseworker Chandra Thomas to review his placement in the administrative segregation unit. (*Id.*, Ex. A, p. 1). Thomas read Plaintiff his rights, and discussed Viduarri's allegations and the pending disciplinary charges. (*Id.*).

On October 18, 2010, Branham conducted the preliminary hearing, during which he read the notice of charges to Plaintiff and discussed Viduarri's allegations with Plaintiff. (*Id.*, Ex. G, ¶ 5). Plaintiff told Branham that Correctional Officer Tonya Thomas had given him permission to leave the culinary with a drink and asked to call her as a witness at his disciplinary hearing. (*Id.*, Ex. C, p. 4; *id.* Ex. G, ¶ 5). Plaintiff then signed the preliminary hearing report (Disciplinary Form II). (*Id.*, Ex. C, pp. 4–5; *id.*, Ex. G, ¶ 6).

On November 9, 2010, Correctional Officer Robert Martinez conducted the disciplinary hearing, in which he found Plaintiff guilty of M3: Possession of unauthorized items with a value of less than $25. (*Id.*, Ex. C, p. 1). Martinez sentenced Plaintiff to a verbal reprimand and time already served in the administrative segregation unit, which amounted to thirty-two days. (*Id.*).

**B.    Offense in Custody No. 321269**

On February 2, 2011, at 5:30 a.m., Plaintiff contacted Correctional Officer Trainee Kingsley Anoshiri and demanded to be let out of his cell. (*Id.*, Ex. D, p. 5; *id.*, Ex. I, ¶ 4). Anoshiri told

---

[1] Although the date of service for the notice of charges appears to read October 19, 2010, Branham and Eubanks signed the form on October 10, 2010.

Plaintiff to wait, as he was making wake-up calls for the culinary workers, but Plaintiff continued to buzz the intercom. (*Id.*). At 5:37 a.m., Plaintiff demanded an emergency grievance, but refused to explain the emergency to Anoshiri. (*Id.*, Ex. D, p. 5). At 5:44 a.m., Anoshiri let Plaintiff out of his cell. Plaintiff approached the control bubble and told Anoshiri, "I will get you." (*Id.*, Ex. D, p. 5; *id.*, Ex. I, ¶ 4). Anoshiri asked if Plaintiff meant his statement to be a threat and Plaintiff replied, "Yes and I will get you for all you own!" (*Id.*). Anoshiri wrote a report detailing the incident. (*Id.*, Ex. D, p. 5; *id.*, Ex. I, ¶ 5).

On February 7, 2011, Senior Correctional Officer Michael Flamm served Plaintiff with a notice of charges for G18: Delaying/Hindering/Interfering with Staff and MJ25: Threats. (*Id.*, Ex. D, p. 5). Plaintiff refused to sign the notice of charges (Disciplinary Form I), and Flamm noted Plaintiff's refusal to sign on the form. (*Id.*, Ex. D, p. 5; *id.*, Ex. J, ¶ 5). Flamm also conducted Plaintiff's preliminary hearing. Plaintiff participated in the preliminary hearing, but he refused to sign the preliminary hearing report (Disciplinary Form II). (*Id.*, Ex. D, p. 4; *id.*, Ex. J, ¶ 6). Accordingly, Flamm noted Plaintiff's refusal to sign on the form. (*Id.*).

On February 22, 2011, Correctional Lieutenant James Kelly conducted the disciplinary hearing. (*Id.*, Ex. D, pp. 1-2; *id.*, Ex. K, ¶ 5). The disciplinary hearing proceeded as follows:

| | |
|---|---|
| Kelly: | This is Lieutenant Kelly. It's approximately 6:20 p.m. on February 22, 2011. This is the time set aside for disciplinary hearing, James Kenner, 90035. Is that right, Mr. Kenner? |
| Plaintiff: | Yes. |
| Kelly: | Okay. Mr. Kenner, on February 1, 2011, Officer [Anoshiri] wrote a report which led to you being charged with a G18, delaying/hindering, and MJ25, threats. I'll get into the charges in a second. You did get a copy of this report, didn't you? |
| Plaintiff: | No. |
| Kelly: | You didn't. Okay. That's because you refused to sign, right? Is that correct? |
| Plaintiff: | What? |
| Kelly: | You refused to sign your report for receipt of report? |
| Plaintiff: | I haven't even seen it. |

| | | |
|---|---|---|
| Kelly: | Okay. Well, I got my signature right there saying that you refused to sign. So if you want to call me a liar— | |
| Plaintiff: | I— | |
| Kelly: | -- I'll send your ass back home right now.[2] | |
| Plaintiff: | I can't, I can't read that. | |
| Kelly: | Okay. | |
| Plaintiff: | That's why I didn't sign it. | |
| Kelly: | All right. You know what, you need to get the hell out of here right now. S and E, I'll—Stand by. Sit down. | |
| Plaintiff: | I thought you told me to (indistinct). | |
| Kelly: | Sit down. I'm telling you to sit down. When I tell you to get up, you get up. Okay? You understand what I'm saying? Do you understand what I'm saying? | |
| Plaintiff: | Yes. | |
| Kelly: | Okay. (Indistinct). I need you to come down here and get the J3 escort, get him back home. | |
| Unidentified: | Okay. | |
| Kelly: | All right. I'm going to stop the tape now until we get this situation squared away. | |

This portion of the hearing lasted approximately one minute and thirty-eight seconds. Once Plaintiff was removed from the hearing, Kelly resumed recording, stating:

Kelly: This is Lieutenant Kelly. It's approximately 6:35 p.m. Mr. Kenner was removed from the hearing. And I deliberated with Mr. Kenner in absentia, based on the written report alone. I had no chance to call witnesses or take a statement from Mr. Kenner.

Kelly then read the notice of charges into the record, and concluded that based on Plaintiff's history of dealing with correctional officers, he was guilty of MJ25: Threats.[3] Kelly sentenced Plaintiff to 120 days in disciplinary segregation with a stat referral of 59 days (*Id.*, Ex. M, ECF No. 14-3; *id.*, Ex. N).

---

[2] Lt. Kelly's own signature does not appear to be on the notice of charges (Disciplinary Form I) or the preliminary hearing report (Disciplinary Form II), but at least Flamm's signature is on both forms. In other words, it appears that when Lt. Kelly said he had "my signature," he meant it colloquially, not literally; the forms are all signed.

[3] In his declaration, Kelly states that he knew plaintiff had a history of disruptive behavior and was often a management problem. (*Id.*, Ex. K, ¶ 7).

In his declaration, Kelly states that he has participated in thousands of disciplinary hearings—many as the disciplinary hearing officer. (*Id.*, Ex. K, ¶¶ 1, 4). Of these proceedings, Kelly believes that there have been fewer than ten instances in which an inmate had to be removed from the hearing due to the inmate's behavior. (*Id.* 4). Kelly asserts that Plaintiff had refused to sign the notice of charges and had refused to participate in the preliminary hearing, (*id.*, Ex. K, ¶ 7), and that when Plaintiff refused to answer basic questions in his disciplinary hearing, Kelly felt that Plaintiff was being disruptive, (*id.*, Ex. K, ¶ 8). Kelly contends that his decision to remove Plaintiff from the disciplinary hearing was appropriate, given Plaintiff's behavior.[4] (*Id.* 11). Kelly also argues that because Plaintiff was disruptive during his disciplinary hearing, Plaintiff waived the right to call witnesses. (*Id.* 10, 12).

Defendants now move for summary judgment on the grounds that: (1) Defendants did not violate Plaintiff's due process rights; and (2) Defendants are entitled to qualified immunity. Defendants attach several documents to support their motion for summary judgment, including a case note report, administrative segregation classification documents, Disciplinary Forms I, II, and III for OIC No. 315196, Disciplinary Forms I, II, and III for OIC No. 321269, declarations from Vidaurri, Lt. Smith, Officer Branham, Officer Eubanks, Anoshiri, Officer Flamm, and Kelly, a copy of A.R. 707, a compact disc containing audio from Plaintiff's February 22, 2011, disciplinary hearing for OIC No. 321269, and a transcript of Plaintiff's disciplinary hearing for OIC No. 321269.

---

[4] NDOC's Administrative Regulation ("A.R.") 707 § 2(B)(3)(e)(1) reads:
  The inmate will be present at the [disciplinary] hearing except when:
  - They refuse to attend and/or waive their appearance before the Disciplinary Hearing Officer.
  - Their behavior is disruptive.
  - Confidential information is being presented.
  - The reason for an inmate's absence will be documented (*Id.*, Ex. L, p. 19).

-6-

Plaintiff alleges: (1) Vidaurri violated Plaintiff's due process rights (for OIC No. 315196) by subjecting him to "solitary confinement" without a formal notice of charges or a prior hearing; (2) Vidaurri violated Plaintiff's due process rights (for OIC No. 315196) by filing the notice of charges on a NOTIS form instead of on a Department of Correction ("DOC") Form No. 3017, as specified in A.R. 707; (3) Anoshiri violated Plaintiff's due process rights (for OIC No. 321269) by failing to file the notice of charges on DOC Form No. 3017, as specified in A.R. 707; (4) Kelly violated Plaintiff's due process rights (for OIC No. 321269) by failing to inform Plaintiff of his constitutional rights; and (5) Kelly violated Plaintiff's due process rights (for OIC No. 321269) by denying Plaintiff the opportunity to call witnesses at his disciplinary hearing.

## II.  LEGAL STANDARDS

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). In determining summary judgment, a court uses a burden-shifting scheme:

> When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that

the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

///

///

**III. ANALYSIS**

Title 42 U.S.C. § 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert,* 526 U.S. 286, 290 (1999). Section 1983 does not offer any substantive rights, but provides procedural protections for federal rights granted elsewhere. *Albright v. Oliver,* 510 U.S. 266, 271 (1994). To prove liability under § 1983, a plaintiff must: (1) show that a person acting under color of state law engaged in some type of conduct, which (2) deprived the plaintiff of some right, privilege or immunity secured by the Constitution or federal statutory law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overturned on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).

Defendants Vidaurri, Anoshiri, and Kelly argue that they did not violate Plaintiff's due process rights in either disciplinary proceeding. Defendants also argue that even if the Court concludes that there are genuine issues of material fact surrounding Plaintiff's due process claims, Defendants are nonetheless entitled to qualified immunity because it would not have appeared beyond debate to a reasonable correctional officer that Defendants' actions were unconstitutional.

Under the Due Process Clause of the Fourteenth Amendment, "[p]risoners . . . may not be deprived of life, liberty, or property without due process of law." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). A valid due process claim has three prerequisites: (1) the deprivation, (2) of a liberty or property interest, (3) by officials acting under color of state law. *Parratt*, 451 U.S. at 536–37. In order to prevail on a claim of deprivation of liberty without due process of law, a plaintiff must first establish the existence of a protected liberty interest. After meeting this threshold requirement, the plaintiff must then demonstrate that defendants failed to provide the process due. *See Wolff*, 418 U.S. at 556–57; *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003).

Liberty interests may arise from two sources: the Due Process Clause itself or state law. *Hewitt v. Helms*, 459 U.S. 460, 466–68 (1983), *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995). The Due Process Clause itself does not confer a liberty interest in freedom from state action taken "within the normal limits or range of custody which the conviction has authorized the State to impose." *Sandin*, 515 U.S. at 478 (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)). Thus, the Supreme Court has ruled that the Due Process Clause does not afford prisoners a liberty interest in being free from intrastate prison transfers, *Meachum*, 427 U.S. at 225, or in remaining in the general prison population, *Hewitt*, 459 U.S. at 468; *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997) ("administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence.").

However, in certain circumstances, states may create liberty interests protected by the Due Process Clause. *Sandin*, 515 U.S. at 483–84. For example, in *Wolff*, the Court found that a Nebraska statutory provision created a liberty interest in an inmate's accumulation of good time credits. 418 U.S. at 557. The Court has also found that a liberty interest in avoiding transfer to particular conditions of confinement may arise from state prison regulations, but only if the transfer "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222 (2005). Under *Sandin*, a factual comparison must be made between conditions in the general prison population and those in administrative segregation, "examining the hardship caused by the prisoner's challenged action in relation to the basic conditions of life as a prisoner." *Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003). There is no single standard for this comparison. Instead, courts examine the "condition or a combination of conditions" in a case by case fashion. *Kennan v. Hall*, 93 F.3d 1083, 1089 (9th Cir. 1996). Specifically, courts consider three factors: (1) whether the challenged sanction "mirror[s]

those conditions imposed upon inmates in administrative segregation and protective custody" demonstrating that the prison acted within its discretionary authority; (2) the duration of the sanction; and (3) whether the sanctions will necessarily affect the length of the prisoner's sentence. *Serrano*, 345 F.3d at 1078.

As noted previously, once a protected liberty interest has been found, the court must determine what process is due under the Fourteenth Amendment and whether defendants have provided the process due. *Quick v. Jones*, 754 F.2d 1521, 1523 (1984). When an inmate faces disciplinary charges that may result in the loss of a cognizable liberty interest, prison officials must provide the inmate with: (1) a written statement at least twenty-four hours before the disciplinary hearing that includes the charges and a description of the evidence against the prisoner; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would be unduly harmful to institutional security or correctional goals; (3) legal assistance where the charges are complex or the inmate is illiterate; and (4) a written statement by the fact-finders detailing the evidence relied upon and the reasons for the disciplinary action. *Wolff*, 418 U.S. at 563–70. In addition, the findings of the prison disciplinary board must be supported by some evidence in the record. *Superintendent v. Hill*, 472 U.S. 445, 454 (1985). This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced . . . ." *Id.* at 455 (citing *U.S. ex rel. Vajtauer v. Comm'r of Immigration*, 273 U.S. 103, 106 (1927)).

### A.     Offense in Custody No. 315196

Defendants argue Plaintiff did not suffer the loss of any protected liberty interest but only received a verbal reprimand and thirty-two days of time already served in the administrative segregation unit, the conditions of which were "within the normal limits or range of custody which the conviction has authorized the State to impose." *Sandin*, 515 U.S. at 478 (citing *Meachum v.*

*Fano*, 427 U.S. 215, 225 (1976)). Defendants also argue that even if the Court concludes that a protected liberty interest was at stake, Plaintiff cannot show that Vidaurri violated Plaintiff's due process rights.

Plaintiff responds that Vidaurri violated Plaintiff's due process rights by subjecting him to "solitary confinement" without a formal notice of charges or a prior hearing and by filing the notice of charges on a NOTIS form, instead of a DOC Form No. 3017.

Defendants reply that Plaintiff was not entitled to a formal notice of charges or a prior hearing before transfer into the administrative segregation unit and that Plaintiff does not have the right to receive the notice of charges on any particular form.

The Court agrees with the magistrate judge that there is no evidence that Plaintiff's deprivations—a verbal reprimand and thirty-two days of time already served in administrative segregation—constitute the loss of any protected liberty interest. Segregated housing, such as administrative segregation, does not in and of itself implicate a protected liberty interest. *Serrano*, 345 F.3d at 1078; *May*, 109 F.3d at 565; *Sandin*, 515 U.S. at 484 (inmate does not have a liberty interest in preventing transfer to more restrictive conditions of confinement, unless the inmate can demonstrate that the transfer caused "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."). Plaintiff has not alleged that his confinement in the administrative segregation unit presented the type of "atypical or significant, deprivation [that] might conceivably create a liberty interest." *Resnick v. Hayes*, 213 F.3d 443, 448 (9th Cir. 2000). Plaintiff has failed to set forth any facts comparing prison conditions in the general population with those in administrative segregation, and Plaintiff has failed to explain how confinement in the administrative segregation unit has worked "a major disruption" in his life as a prisoner. *See id*; *Sandin*, 515 U.S. at 486–87. In addition, Plaintiff has not shown that his thirty-two days of confinement in the

administrative segregation unit was "atypical or significant." *See Sandin*, 515 U.S. at 486 (30 days in disciplinary segregation did not work a major disruption in inmate's environment); *Resnick*, 213 F.3d at 445 (30 days in segregated housing unit did not give rise to a protected liberty interest). Finally, Plaintiff has not alleged that his thirty-two days in the administrative segregation unit increased the length of his sentence.

The Court finds that Plaintiff's punishment—a verbal reprimand and thirty-two days of time served in the administrative segregation unit—was clearly "within the range of confinement to be normally expected" by prison inmates "in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87. Accordingly, the Court grants summary judgment to Defendants on this claim, both on the merits and as to qualified immunity.

Finally, even assuming *arguendo* that Plaintiff had demonstrated the existence of a protected liberty interest, the Court finds that WSCC's procedures satisfied the due process requirements applicable to assignment to administrative segregation.

Confining an inmate to administrative segregation pending investigation of disciplinary charges against the inmate does not require any elaborate procedural safeguards. *Hewitt*, 459 U.S. at 475. When an inmate is placed in segregated housing, prison officials need only provide an informal, non-adversary review of the evidence justifying the decision to segregate the inmate. *Id.* at 476. Unlike a proceeding where a cognizable liberty interest is at stake, an inmate is not entitled to a "detailed written notice of charges, representation by counsel or counsel-substitute, an opportunity to present witnesses, or a written decision describing the reasons for placing the prisoner in administrative segregation." *Toussaint v. McCarthy*, 801 F.2d 1080, 1100-01 (9th Cir. 1986), *abrogated in part on other grounds by Sandin*, 515 U.S. 472. Instead, the inmate must merely receive some notice of the charges against him within a reasonable time following the inmate's

transfer, and an opportunity to present his views to the prison official tasked with making the segregation decision. *Hewitt*, 459 U.S. at 476 n.8.

The record reflects that Plaintiff received notice of the charges against him and an opportunity to present his views about the charges within a reasonable time following Plaintiff's transfer. Plaintiff was transferred to the administrative segregation unit on October 7, 2010. That same day, Lt. Smith gave Plaintiff a notice of classification, which explained that Plaintiff had been transferred to the administrative segregation unit because Vidaurri reported that Plaintiff had thrown his identification card at Vidaurri. Thereafter, Plaintiff met with Thomas to review his placement in administrative segregation, and to discuss Viduarri's allegations and the pending disciplinary charges. Thus, even assuming that Plaintiff had a protected liberty interest in freedom from confinement in the administrative segregation unit, the Court finds that Plaintiff received the process due. WSCC did not violate Plaintiff's due process rights by confining him in the administrative segregation unit pending investigation of his disciplinary charges.

Finally, the court finds that Plaintiff's argument that defendant Vidaurri violated his due process rights by filing the notice of charges on a NOTIS form instead of a DOC Form No. 3017 has no merit. Plaintiff has a constitutional right to receive advance written notice of the charges against him, or at least he would if a cognizable liberty interest were at stake. *See Wolff*, 418 U.S. at 563. But in no case does Plaintiff have a constitutional right to receive a written notice on any particular form. It is immaterial which form, if any, NDOC uses so long as NDOC adequately apprises inmates of the charges against them. *See Walker v. Sumner*, 14 F.3d 1415, 1420 (9th Cir. 1994), *abrogated on other grounds by Sandin*, 515 U.S. 472 (a violation of a prison's internal regulations does not violate the Due Process Clause as long as the minimal protections outlined in *Wolff* have been provided).

-14-

### B.   Offense in Custody No. 321269

Defendants argue that neither Anoshiri nor Kelly violated Plaintiff's due process rights.

Plaintiff responds that: (1) Anoshiri violated Plaintiff's due process rights by failing to file the notice of charges on DOC Form No. 3017; (2) Kelly violated Plaintiff's due process rights by failing to inform Plaintiff of his constitutional rights; and (3) Kelly violated Plaintiff's due process rights by denying Plaintiff the opportunity to call witnesses at his disciplinary hearing.

Defendants reply that: (1) Kelly properly exercised his discretion to remove Plaintiff from the disciplinary hearing after Plaintiff became disruptive; (2) Plaintiff waived his limited right to call witnesses via his disruptive behavior; and (3) Plaintiff has not identified any witness that he would have called to testify at the disciplinary hearing.

As a preliminary matter, the court must determine whether Plaintiff had any constitutionally protected liberty interest. Kelly found Plaintiff guilty of MJ25: Threats and sentenced him to 120 days in disciplinary segregation with a stat referral of fifty-nine days. The court is unfamiliar with the term "stat referral." The magistrate judge notes that:

> [D]efendants do not dispute the existence of a protected liberty interest in freedom from 120 days of disciplinary segregation with a stat referral of fifty-nine days. Accordingly, the court construes defendants' silence as a concession that plaintiff had a constitutionally protected liberty interest entitling him to the procedural protections outlined in *Wolff*.

(R&R 16, Oct. 31, 2012, ECF No. 23). The Court disagrees. Defendants cannot create a liberty interest by their silence, or even by their affirmative agreement with Plaintiff. The existence of a liberty interest against disciplinary segregation depends purely on whether the conditions of confinement in disciplinary segregation satisfy the *Sandin* test as an objective matter. There is no inherent difference between administrative and disciplinary segregation. The analysis of whether there is a liberty interest in the avoidance of either of these types of segregation turns purely upon

the respective conditions a prisoner will experience there. As the magistrate judge notes, "Plaintiff has failed to set forth any facts comparing prison conditions in the general population with those in administrative segregation . . . . [or] that his thirty-two days in the administrative segregation unit increased the length of his sentence." (R&R 13). Plaintiff has similarly failed to make any such allegations with respect to the 120 days of disciplinary segregation and "stat referral," and that is fatal to his due process claim, because he has not established any liberty interest to be protected under the Due Process Clause. Plaintiff simply refers to both types of segregation as "solitary segregation," with no further description. He also argues that he may lose the ability to gain good time credits because of his discipline, but the loss of that ability will not "inevitably" affect the length of his sentence. *See Sandin*, 515 U.S. at 487; *Higgason v. Farley,* 83 F.3d 807, 809–10 (7th Cir. 1995). The magistrate judge assumed a liberty interest and went on to determine that summary judgment was not appropriate because of factual issues concerning the procedures at the disciplinary hearing. But once it has been established that there is no evidence of a cognizable liberty interest (or, as in this case, even a sufficient allegation of one), the analysis ends under *Sandin*. As with the claim under the first OIC, Defendants are entitled to summary judgment on the merits and qualified immunity.

///

///

///

///

///

///

///

**CONCLUSION**

IT IS HEREBY ORDERED that the Report and Recommendation (ECF No. 23) is ADOPTED IN PART and REJECTED IN PART.

IT IS FURTHER ORDERED that the Motion for Summary Judgment (ECF No. 14) is GRANTED.

IT IS FURTHER ORDERED that the Clerk shall enter judgment and close the case.

IT IS SO ORDERED.

Dated this 21st day of February, 2013.

_____
ROBERT C. JONES
United States District Judge